## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

VENUS FASHION, INC.,

      Plaintiff,

v.

CONTEXTLOGIC INC., and
WISH, INC.,

      Defendants.

Civil Action No.:
Honorable:

_____/

### Plaintiff's Application For Preliminary Injunction
### And Memorandum Of Law In Support Thereof

**DYKEMA GOSSETT PLLC**

Allan Gabriel
*Pro Hac Vice Pending*
333 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: 213-457-1800
Facsimile: 213-457-1850
agabriel@dykema.com

Aaron D. Charfoos
*Pro Hac Vice Pending*
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
acharfoos@dykema.com
*Attorneys for Plaintiff Venus Fashion, Inc.*

**AKERMAN LLP**

David Otero
Florida Bar No. 651370
david.otero@akerman.com
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

Peter A. Chiabotti
Florida Bar No. 0602671
peter.chiabotti@akerman.com
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
*Attorneys for Plaintiff Venus Fashion, Inc.*

{38689637;2}

**Table of Contents**

**Page**

MEMORANDUM OF LAW IN SUPPORT ................................................................... 2

I.    Statement of Facts ................................................................................................ 2

    A.    Venus's Rights. .......................................................................................... 2

    B.    Defendants are Engaged in Illegal Activities Within This District. ............................. 3

    C.    Venus Repeatedly Notified Wish of the Infringing Images But Wish Has Not, or Cannot, Remove the Images. .................................................................................. 7

II.    Argument ............................................................................................................. 9

    A.    Standard for Preliminary Injunction. ......................................................... 10

    B.    Probability of Success on the Merits of Venus's Claims ............................. 11

        1.    Wish Directly Infringes ...................................................................... 11

        2.    Wish Indirectly Infringes .................................................................... 14

            a.    Contributory Infringement .......................................................... 15

            b.    Vicarious Infringement ............................................................... 15

    C.    Venus Will Be Irreparably Harmed If An Injunction Does Not Issue ....................... 16

    D.    Balance of Hardships Tips Sharply in Venus's Favor ................................. 18

    E.    The Relief Sought Serves the Public Interest. ............................................ 18

    F.    The Equitable Relief Sought Should Issue. ................................................ 19

        1.    Entry of a Preliminary Injunction Immediately Enjoining Defendants' Unauthorized and Illegal Use of the Venus Images is Appropriate ..................... 19

        2.    Entry of an Order Prohibiting Transfer of the Subject Domain Name During the Pendency of this Action is Appropriate. ................................................. 19

        3.    Entry of an Order Preventing the Transfer of Defendants' Assets. ....................... 20

CONCLUSION ........................................................................................................ 22

## Table of Authorities

Page(s)

CASES

*American Bridal and Prom Industry Assoc., Inc. et al. v. The Partnerships and Unincorporated Associations Identified in Schedule "A" and John Does 1-100, et al.*,
No. 1:16-cv-00023 (N.D. Ill. January 13, 2016)................................................................21

*Arista Records LLC v. Lime Wire LLC*,
2010 U.S. Dist. LEXIS 155675 (S.D.N.Y. Oct. 26, 2010) ................................................17

*Bateman v. Mnemonics, Inc.*,
79 F.3d 1532 (11th Cir. 1996) ..........................................................................................13

*Buck v. Jewell-La Salle Realty Co.*,
283 U.S. 191, 51 S. Ct. 410, 75 L. Ed. 971 (1931)...........................................................12

*Cable/Home Commun. Corp. v. Network Prods.*,
902 F.2d 829 (11th Cir. 1990) ..........................................................................................15

*Chanel, Inc. v. Zhixian*,
Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) .........................................................20

*Clear Skies Nev., L.L.C. v. Salman*,
No. 8:15-cv-2710-T-30TGW, 2016 U.S. Dist. LEXIS 65384 (M.D. Fla. May 18, 2016)....................................................................................................................16

*Cobbler Nevada, LLC v. Woodard*,
8:15-cv-2652-T-33AEP, 2016 U.S. Dist. LEXIS 72630 (M.D. Fla. June 3, 2016) .................................................................................................................................17

*Columbia Pictures Indus. v. Fung*,
2010 U.S. Dist. 61169 (C.D. Cal. May 20, 2010)..............................................................17

*Corwin v. Walt Disney World Co.*,
475 F.3d 1239 (11th Cir. 2007) ........................................................................................14

*Davidoff & Cie, S.A. v. PLD Int'l*,
263 F.3d 1297 (11th Cir. 2001) ........................................................................................18

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*,
756 F.2d 1525 (11th Cir. 1985) ........................................................................................11

iii

*Evans v. Wallace Berrie & Co.*,
    681 F. Supp. 813 (S.D. Fla. 1988) ..................................................................14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)........................................................................................11

*Ferrero v. Associated Materials, Inc.*,
    923 F.2d 1441 (11th Cir. 1991) ....................................................................17

*Ford Motor Co. v. Lapertosa*,
    126 F. Supp. 2d 463 (E.D. Mich. 2001)........................................................20

*Gaffigan v. Doe*,
    689 F. Supp. 2d 1332 (S.D. Fla. 2009) ..........................................................17

*Gaffigan v. Does 1-10*,
    Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009) ..................................20

*Gucci America, Inc. v. Does 1-10*,
    Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010)..................................20

*Iconix, Inc. v. Tokuda*,
    457 F. Supp. 2d 969 (N.D. Cal. 2006) ..........................................................20

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*,
    *51* F.3d 982 (11th Cir. 1995) ................................................................11, 21

*Malibu Media, L.L.C. v. Ritchie*,
    No. 8:14-cv-1570-T-30EAJ, 2015 U.S. Dist. LEXIS 43874 (M.D. Fla.
    Apr. 1, 2015)..................................................................................................16

*MGM Studios Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d. 1197 (C.D. Cal. 2007) ..................................................16, 17

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
    89 F.3d 1548 (11th Cir. 1996) ......................................................................12

*National Football League v. Chen Cheng, et al.*,
    No. 11-Civ-00344 (S.D.N.Y. February 1, 2011) ............................................21

*The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian
    Sharing, et al.*,
    No. 10-Civ-1630 (AKH) (S.D.N.Y. December 2, 2010)..................................21

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
    684 F.2d 821 (11th Cir. 1982) ......................................................................13

*Reebok Int'l v. Marnatech Enter.*,
   737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd sub nom. Reebok Int'l v.*
   *Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992) ............................................................21

*Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*,
   No: C 12-5543 ..........................................................................................................17

*Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*,
   No. 10-Civ-9336 (S.D. N.Y. January 4, 2011) ....................................................................21

**RULES**

Fed. R. Civ. P. 65(a) ............................................................................................................10

**STATUTES**

17 U.S.C. § 106 ..................................................................................................................11

17 U.S.C. §§ 106 and 501 ..................................................................................................11

17 U.S.C. § 410(c) ..............................................................................................................12

17 U.S.C. § 501(a) (2012)..................................................................................................12

Plaintiff Venus Fashions, Inc. ("Venus") respectfully moves, pursuant to Federal Rule of Civil Procedure 65(a) and Rule 4.06 of the Local Rules of the Middle District of Florida, for a preliminary injunction against Defendants, Wish, Inc. and ContextLogic Inc. d/b/a the domain name www.wish.com (collectively "Wish") from further infringing, directly or indirectly, Venus's copyrighted works.

Good cause exists for the foregoing order.  As set forth in the accompanying Memorandum of Points and Authorities, Defendants are infringing on Venus's registered copyrights by utilizing identical, substantially similar, or derivatives of photographs and images that are used to promote, sell, offer for sale or distribute Defendants' products within this Judicial District through a fully interactive commercial Internet website, www.wish.com, mobile applications and other social media outlets.  The activities of Defendants constitute willful and intentional infringement of Venus's copyrighted works in total disregard of Venus's rights, and have taken place in spite of Defendants' knowledge that use of Venus's copyrighted works was, and is, in direct contravention of Venus's rights.

Defendants' unlawful activities have caused and will continue to cause irreparable injury to Venus. Among other things, Defendants have: (1) deprived Venus of its right to determine the manner in which Venus's copyrighted works are presented to the public; (2) deceived the public as to Venus's sponsorship and/or association of Defendants' goods and the websites through which such goods are marketed and sold; and (3) wrongfully traded and capitalized on Venus's reputation and goodwill and the commercial value of Venus's copyrighted works. Defendants should not be permitted to continue their unlawful activities and must be enjoined from continuing to infringe on Venus's copyrighted works.

WHEREFORE, Plaintiff respectfully requests this Court grant its application and enter an order requiring Wish to modify the Wish "algorithm" to stop the redistribution and display of Venus's images and if Wish cannot modify the "algorithm," to disable the "algorithm" until Wish can do so, and also enjoining Wish from: 1) displaying any of Venus's images on Wish's website, www.wish.com, from using Venus's images in its promotional emails or on any other social media platform; 2) transferring the domain name wish.com during the pendency of this action; and 3) preventing the transfer of Defendants' assets.

**MEMORANDUM OF LAW IN SUPPORT**

## I.    STATEMENT OF FACTS

### A.    Venus's Rights.

Venus began in 1982, in a college dorm room, as a company creating competition bodysuits.  See Exhibit 1, Declaration of Robin Sheffler in Support of Plaintiff's Application for Entry of Preliminary Injunction and Memorandum of Law In Support Thereof with Exhibits A-D at ¶ 2 ("Sheffler"). Since that time, Venus has grown and is now a highly successful designer and creator of women's clothing and swimwear.  Sheffler at ¶ 3. Venus is headquartered in the Jacksonville, Florida, where Venus's products are designed and developed.  *Id.*  Venus employs over 650 people in the State of Florida. *Id.* at 4.

Venus sells its products online, at www.venus.com and in a catalog Venus sends to its subscribers. *Id.* at ¶ 5. In order to market and promote its products, Venus spends significant time and money to create photographic images of its products (the "Images"), such as the Images included below:



*Id.* at ¶ 6. These Images are posted on Venus's website and included in its catalog. *Id.* at ¶ 7.

Venus also takes intellectual property seriously and copyrights all of the Images that it includes on its website or in its catalogs.  *Id.* at ¶ 8. Venus is, and at all times relevant hereto has been, the owner and/or exclusive licensee of all rights in and to U.S. Copyright registration numbers TX 8-161-774, registered February 23, 2016, and TXu 1-987-646, registered April 14, 2016, (the "Venus Copyrights") in which all of Venus's copyrighted Images at issue in this litigation appear.  Sheffler at ¶ 9, Exhibit A (United States Copyright Registration of the Venus Copyrights). Venus's ownership, licenses and registrations of the copyrighted works precede Defendants' known infringement as alleged in the Complaint.

**B.     <u>Defendants are Engaged in Illegal Activities Within This District.</u>**

Venus's evidence demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, sale, and offer for sale of goods by using photographs which infringe upon the Images protected by the Venus Copyrights (the "Infringing Photographs"). These goods tend to be of inferior quality and differ from what the customers believed that they were purchasing based upon Defendants' use of the Infringing Photographs. Sheffler at ¶ 13, Ex. C  (Facebook comments).

Defendants do not have, nor have they ever had, the right or authority to use the works protected by the Venus Copyrights for any purpose. Sheffler at ¶ 10. However, despite their known lack of authority to do so (see below for Venus's correspondence putting Defendants on notice of infringement), Defendants are promoting and otherwise advertising, distributing, selling, and/or offering for sale at least its goods by misleadingly using the Infringing Photographs ("Defendants' Goods"). Sheffler at ¶ 11, Ex. B.

Wish provides an online and mobile shopping marketplace. See Exhibit 2, Declaration of Aaron Charfoos in Support of Plaintiff's Application for Preliminary Injunction and Memorandum in Support Thereof with Exhibits E-I ("Charfoos") at ¶ 2, Ex. E. Merchants and users can access Wish through the internet at www.wish.com or by using an Apple or Android mobile application. Charfoos at ¶ 2-3, Exs. E-F. Wish's online and mobile marketplace works on a revenue sharing model. Charfoos at ¶ 3, Ex. F. As Wish states on its website, when Wish merchants make sales and get paid, Wish gets paid. *Id.* Accordingly, when Wish merchants make a sale from a posting using the Infringing Photographs, Wish shares in the profits of those sales.

As evidenced in the screen captures from the relevant web pages from www.wish.com and promotional emails, a comparison of the Images protected by the Venus Copyrights at issue to the Infringing Photographs used by Defendants in connection with the sale of Defendants' Goods reveals the infringing nature of Defendants' website. Sheffler at ¶ 11, Ex. B (Comparison of www.wish.com image with Venus Copyrighted Image). Based on a July 6 - 8, 2016 review of the www.wish.com website, there were approximately 100

Infringing Photographs that appeared to be identical or derivatives of the Venus Copyrighted images used to sell Defendants' goods. *Id.*

Below are several comparisons of the Venus Image with the Infringing Photographs (*Id.* at ¶ 12):



| Venus Copyrighted Image | Infringing Photographs on www.wish.com Website |
|---|---|

In addition to displaying the photographs on its website, Wish also uses the photographs in various promotional material including in emails directly sent to customers or potential customers, banner ads, Facebook listings, other social media outlets and on its logon screen. Charfoos at ¶ 5-6. For example:



Wish promotional email with Infringing Photograph



Moreover, | Wish website customer login screen with Infringing Photographs |

confusing Venus's goods with the lower quality goods on www.wish.com – because the

Wish goods are marketed with the identical photograph.  Sheffler at ¶ 13, Ex. C.  For

example, numerous Venus customers have taken to Facebook to "educate" others about the

differences between Venus and other companies using Venus's images to sell inferior

products:

- "Venus is legit. I'm certain you have them confused with some of the foreign companies like Wish, Modlily, Wedress. This is a good company with quality clothing. I've never had any complaints."

- "You have them mixed up with the Chinese knockoff companies.  The clothes are not near the quality and they steal all of Venus' images so you think you are getting the same.  They definitely are very bad knockoffs. Venus is a great company to order from, I have a ton of their products!"

- "I was wondering if they are one of those Chinese companies. I see they are solely out of Florida but that can be faked.   What didn't you like about them?"

- "Sharon Morgan, those other sites using Venus' model pics are the ones you should question. They aren't giving you the same quality and selling some cheaper made version for pennies, aren't true to fit, and while you wait on your $9 for months & months. I've used Venus for years and years. Never an issue with product, delivery, customer service, or a return. Too high? I have seen the same clothes for less on all those fake Chinese sites like Rosegal, Nastydress, Wish, etc. Not the same, even though the pic is the same - runs super small and inferior quality. Everything I have bought from Venus is higher quality than I expected when I got it, and fits true to size."

*Id*.

**C.     Venus Repeatedly Notified Wish of the Infringing Images But Wish Has Not, or Cannot, Remove the Images.**

Venus first learned of Wish's use of the photographs in March 2016.  *Id.* at ¶ 14.  At

that time, Venus's Controller, Robin Sheffler, sent a letter to Wish identifying the

photographs on Wish's website that appeared to copy Venus's images and provided

information about Venus's registered copyrights, including TX0008161774.  *Id.* at ¶ 15, Ex.

D.  After this initial correspondence, Ms. Sheffler repeatedly notified Wish of the unauthorized use of the images and requested the removal of the infringing materials only to have these same images, and many others, either remain or reappear on the Wish website.  *Id.*

On June 1, 2016, Venus sent another letter to Wish identifying numerous photographs that were either identical, or modified versions, of Venus's Images.  Charfoos at ¶ 7, Ex. G. Many of these images were the same images that Venus had complained about in March and that Wish had allegedly taken down.  *Id.*  Despite the fact that Wish stated that it was "adamant against counterfeits," Wish again proved unable to remove the photographs despite repeated requests to do so.  *Id.*  at ¶ 8, Ex. H.

When asked to identify "who is actually posting the infringing images [,]" Wish provided the contact for six merchants who were allegedly associated with the postings that contained the Infringing Photographs.  *Id.*  While Wish did not state whether Wish or the six merchants posted the Infringing Photographs, Wish did not identify any other third parties associated with the Infringing Photographs or postings.  *Id.*  Therefore, either, Wish or its merchants, are posting the Infringing Photographs to the Wish marketplace.

Moreover, as discussed above, Venus became aware that even when the images were removed from the www.wish.com website, they were being used by Wish in other locations such as on Facebook, on the www.wish.com login screen and in promotional emails.  *Id.* Wish's Elisa Brydum admitted that Wish had developed and utilizes an "algorithm" that provided these kinds of "personalized shopping experience[s]" by recycling images that a user had viewed – even if they were identified as infringing:

> [W]e acknowledge your pictures are showing up on your sign in page.  Please understand that the sign in page is customized to each user's search results.

> So, of course acknowledging that you have been searching for items with your pictures, it is only due to the algorithm of our company that your sign in page is showing those pictures consistently.

*Id.* Of course, the "algorithm" would continue to display the photographs for anyone who viewed them not simply for the ones identified by Venus or Venus's counsel.

Wish also invited Venus to join its "Brand Protection System" to try to combat Wish's posting of infringing material. *Id.* However, this Brand Protection System puts nearly all of the burden on Venus. *Id.* Venus would need to conduct the monitoring of all of Wish's platforms and then Venus would send a message to Wish including the exact website address of the Infringing Photographs. *Id.* Only then would Wish try to take the photographs off its website. *Id.*

Wish admitted that it had no system of its own in place to try to police posting of infringing images – even those that had already been brought to its attention by Venus and others. *Id.* In this regard, Wish stated "we are creating an image match system that will finger print the images and automatically prevent merchants from uploading those products again." *Id.*

Despite the correspondence between the parties with repeated requests to remove the photographs, Wish continues to display the Infringing Photographs on its website and on other social media platforms. Sheffler at ¶11, Ex. B.

## II.    **ARGUMENT**

Rule 65(a) of the Federal Rules of Civil Procedure and Section 502 of the Copyright Act give this Court specific authority to issue an injunction to prevent further infringement of Venus's Copyrights. Fed. R. Civ. P. 65(a) (2009); 17 U.S.C. § 502 (1976). Defendants

fraudulently promote, advertise, and sell goods using Venus's copyrighted works via the Internet website www.wish.com. By their actions, Defendants are not only diverting an unknown amount of business from Venus but also creating a false association in the minds of consumers between Defendants and Venus, tarnishing the Venus brand. With every passing day, more Venus Images are being copied, and Venus is suffering greater harm to its reputation, losing money and consumers are being defrauded out of their money.

Despite repeated requests over multiple months, Wish demonstrated that it either cannot, or will not, remove the Infringing Photographs. Therefore, Venus has no other option than to seek a preliminary injunction from this Court to prevent any further irreparable harm to Venus until this matter may ultimately be decided by this Court.

### A.     Standard for Preliminary Injunction.

To obtain preliminary injunction, Plaintiff must establish that: (1) there is a likelihood that Plaintiff will succeed on the merits at the trial of this action; (2) Plaintiff will suffer irreparable injury if Defendants are not enjoined; (3) the injury to Plaintiff outweighs the threatened harm an injunction would cause to Defendants; and (4) the injunction would not disserve the public interest. *See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51* F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets); *see also E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc., 7*56 F.2d 1525, 1530 (11th Cir. 1985). As will be demonstrated below, Venus's evidence satisfies the *Levi Strauss* test and, accordingly, injunctive relief is appropriate and necessary.

**B.**     <u>**Probability of Success on the Merits of Venus's Claims**</u>

Venus's Complaint charges Defendants with copyright infringement under 17 U.S.C.

§§ 106 and 501. Venus has a substantial likelihood of success on the merits of the claim. The

Copyright Act gives the copyright owner the exclusive right to reproduce a copyrighted

work, to distribute copies of the work and to create derivative works. *See Levi Strauss & Co.,*

*51* F.3d at 985; 17 U.S.C. § 106 (2002). In order to prevail on its copyright infringement

claim, Venus must prove: (1) ownership of valid copyrights in the works at issue; and (2)

Defendants copied constituent elements of the work that are original. *See Feist Publ'ns, Inc.*

*v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendants' knowledge or intent is

irrelevant in determining liability for copyright infringement. *See* 17 U.S.C. § 501(a) (2012);

*Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198-99, 51 S. Ct. 410, 412, 75 L. Ed. 971

(1931).  Venus's evidence submitted herewith satisfies the elements to establish Defendants'

liability for copyright infringement.

1.     <u>Wish Directly Infringes</u>

Venus has submitted true and correct copies of its copyright registrations.  Sheffler at

¶ 9, Ex. A (Venus Copyrights Registrations). This registration serves as *prima facie* evidence

of validity and ownership. 17 U.S.C. § 410(c) (1976).

Accordingly, the only question remaining is whether Defendants copied Venus's

protected works.  However, based on the evidence before the Court, Defendants' copying of

Venus's registered works is also beyond dispute.  Sheffler at ¶ 11, Ex. B.  The Eleventh

Circuit has held:

> As a factual matter, a proof of copying may be shown either by
> direct evidence, or, in the absence of direct evidence, it may be

> inferred from indirect evidence demonstrating that the defendant
> had access to the copyrighted work and that there are probative
> similarities between the allegedly infringing work and the
> copyrighted work.

*MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996).

In the instant case, as shown above in the Statement of Facts and accompanying exhibits, the photographs on Defendants' website are either identical copies of Venus's Images, are substantially identical, or are derivative works that have been modified by Wish (for example by changing the color of an article of clothing, cutting the head off of a model, etc.). This Court need only find Defendants' infringing items bear "substantial similarity" to the copyrighted works, duplication or identicalness are not necessary to establish infringement. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1544 n.25 (11th Cir. 1996). Moreover, substantial similarity is not to be determined by the trained eye but by the "ordinary observer." *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) (citations omitted). In most cases, Defendants' Infringing Photographs cannot be distinguished from Venus's copyrighted Images.

An ordinary observer viewing these Images would undoubtedly view them as essentially identical, and thus strikingly similar, as seen below:



Exhibit B contains numerous examples of the Venus Image and the Wish photographs, all of which are strikingly similar.

In addition, there can be no question Defendants had access to and copied Venus's copyrighted Images.  An inference of access arises when a copy is virtually identical to the copyrighted work.  *See Evans v. Wallace Berrie & Co.*, 681 F. Supp. 813, 818 (S.D. Fla. 1988) (*citing* 3 NIMMER ON COPYRIGHT § 13.02(B), 13-15 and 13-16 n.20.2).  *See also, Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1253-54 (11th Cir. 2007) ("Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar.").  Since Defendants' Infringing Photographs are in many cases identical to Venus's copyrighted Images, an inference of access arises which is impossible for Defendants to legitimately dispute.

Even if the Infringing Photographs were originally posted on Wish by third party merchants, Wish is still liable for direct infringement because the "algorithm," designed and implemented by Wish, copies the Infringing Photographs and repeatedly displays them on Wish's sign in screen, in Wish's promotional emails, on Wish's mobile applications, and on Wish's other social media platforms.  This is all conduct of Wish, not any third party.  Therefore, Venus's likelihood of success on its direct copyright infringement claim favors granting injunctive relief.

2.    <u>Wish Indirectly Infringes</u>

Not only has Wish directly infringed on Venus's copyrights, but even if the Infringing Photographs were posted on Wish by third parties, Wish has also indirectly infringed on Venus's copyrights.

a.    Contributory Infringement

To prove contributory infringement, Venus needs to show that Wish has knowledge of the infringing acts, and that Wish "induces, causes, or materially contributes to the infringed conduct or another." *Cable/Home Commun. Corp. v. Network Prods.*, 902 F.2d 829, 845 (11th Cir. 1990).

First, as described above, whether the photographs were posted by Wish or a third party merchant, they are identical, substantially identical or derivative works infringing on Venus's copyrights. Second, Wish had the required knowledge of the infringement of Venus's Images on Wish website and mobile app. From March 21, 2016, through the filing of the lawsuit, Venus repeatedly notified Wish about the unauthorized use of Venus's copyrighted Images. Exhibits D, G and H. Certainly after the filing of this lawsuit it does.

Furthermore, Wish induces, causes, and materially contributes to the infringing conduct of Wish marketplace merchants. As discussed before, Wish's failure to adequately enforce its copyright infringement policy and proliferation of infringing material by Wish's algorithm induces, causes, and material contributes to the infringement of Venus's Images by sending the message to Wish merchants that use of the Infringing Photographs is encouraged by Wish.

b.    Vicarious Infringement

To prove vicarious infringement, Venus must show that Wish: 1) is profiting from the direct infringement; and 2) has declined the opportunity to stop or limit the infringement. *MGM Studios*, 545 U.S. at 930. Wish's conduct satisfies the test for vicarious infringement. Wish's online and mobile marketplace works on a revenue sharing model. Charfoos at ¶ 3,

Ex. F.  As Wish states on its website, when Wish merchants make sales and get paid, Wish

gets paid.  *Id.*  Accordingly, when Wish merchants make a sale from a posting using the

Infringing Photographs, Wish shares in the profits of those sales.

Moreover, as discussed in detail above, even after receiving multiple notices of the

unauthorized use of Venus's Images, Wish has continued to allow, and perpetuate, those

unauthorized uses, has failed or refused to modify its algorithm to prevent further

unauthorized use, and declined to exercise its ability to stop or limit the infringement of

Venus's Images on other social media platforms.

Therefore, Venus is likely to succeed on the merits of its direct and indirect copyright

infringement claims.

**C.**      **Venus Will Be Irreparably Harmed If An Injunction Does Not Issue.**

Venus will suffer irreparable harm if Wish is not enjoined from further infringing

Venus's valuable intellectual property.  Courts have recognized a wide variety of harms that

will support a finding of irreparable harm including:

- Uncontrolled, widespread distribution of the copyrighted images. *Malibu Media, L.L.C. v. Ritchie*, No. 8:14-cv-1570-T-30EAJ, 2015 U.S. Dist. LEXIS 43874, at *1 (M.D. Fla. Apr. 1, 2015) (irreparable harm after the accused disseminated to a peer-to-peer file sharing site which assumedly resulted in uncontrolled peer-to-peer sharing); *Clear Skies Nev., L.L.C. v. Salman*, No. 8:15-cv-2710-T-30TGW, 2016 U.S. Dist. LEXIS 65384 (M.D. Fla. May 18, 2016) (court found irreparable harm after the accused uploaded copyrighted material during file sharing "swarm" on peer-to-peer file sharing site).

- A substantial likelihood of future infringements. *Cobbler Nevada, LLC v. Woodard*, 8:15-cv-2652-T-33AEP, 2016 U.S. Dist. LEXIS 72630 at *8-9 (M.D. Fla. June 3, 2016) (monetary damages are inadequate to compensate for copies improperly downloaded, copied and distributed by third parties on uncontrolled peer-to peer file sharing site); *Arista Records LLC v. Lime Wire LLC*, 2010 U.S. Dist. LEXIS 155675 at *13-14 (S.D.N.Y. Oct. 26, 2010) (claimant suffered irreparable harm from continued infringement through "viral" file sharing system); *Columbia Pictures*

*Indus. v. Fung*, 2010 U.S. Dist. 61169 at *5 (C.D. Cal. May 20, 2010) (irreparable harm caused by the accused's system automatically making the copyrighted works available to download upon upload by users); *MGM Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d. 1197, 1217-1218 (C.D. Cal. 2007) (irreparable harm caused by substantial number of copyrighted works have and would continue to be exposed to infringement on a large scale).

• Marketplace confusion. *Gaffigan v. Doe*, 689 F. Supp. 2d 1332, 1341 (S.D. Fla. 2009) (irreparable harm caused by similarity of works resulting in substantial likelihood of confusion).

• Harm to the copyright holder's reputation, goodwill, and brand. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (irreparable harm caused by loss of customers and goodwill); *Gaffigan*, 689 F. Supp. 2d at 1341 (irreparable harm caused by continued harm to reputation and goodwill due to substantial likelihood of confusion and different quality of goods).

• Loss of the ability to control and enforce its copyrights. *Columbia Pictures Indus.*, 2010 U.S. Dist. 61169 at *5 (irreparable harm caused by availability of free infringing copies undermining the legitimate growing market for consumers to purchase the same works); *MGM Studios Inc.*, 518 F. Supp. 2d. at 1217-1218 (irreparable harm caused by substantial likelihood of continued infringement erodes claimant's ability to enforce their exclusive rights).

• Loss of customers and market share or diminution in the value of its copyrights. *Columbia Pictures Indus.*, 2010 U.S. Dist. 61169 at *5 (irreparable harm results from "staggering volume of infringement"); *Arista Records*, 2010 U.S. Dist. LEXIS 155675 at *14-15 (irreparable harm results from facilitating unauthorized free distribution of copyrighted works, which undermines the legitimate market); *Ferrero v. Associated Materials, Inc.*, 923 F.2d at 1449 (irreparable harm caused by loss of customers and goodwill citing 5th Circuit).

• Consumer injury. *Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*, No: C 12-5543 SBA, 2012 U.S. Dist. LEXIS 169020, at *36 (N.D. Cal. Nov. 27, 2012).

Each of these is present in the instant case and alone would be sufficient to find

irreparable harm. For example, Defendants' infringement has increased at an alarming rate

from seven images in March 2016 to approximately 100 images at the time of filing this

lawsuit. Exhibits B and D. Left unchecked, all of the Images on Venus's website could soon

be on Wish. Moreover, Wish itself is unable (or refuses) to stop its algorithm from

redisplaying infringing images once they are viewed by a user.  Charfoos at ¶ 8, Ex. H.  Thus Defendants' actions demonstrate both of a loss of Venus's ability to control and enforce its copyrights but also uncontrolled distribution of the images.

In addition, as discussed above and in Exhibit C, Venus has actual evidence of loss of customers and market share, consumer confusion and harm to Venus's reputation.  Sheffler at ¶ 13, Ex. C.  Venus has invested substantial amounts of time and money to create the Images and fashions featured in the Images. Infringement of the Images is catastrophic to Venus's time, monetary investment in creating the Images and goodwill and reputation.

Moreover, the intangible nature of intellectual property rights poses an enhanced risk of irreparable harm. Damages cannot remedy Wish's continued unauthorized use of Venus's Images. Hence, irreparable harm is both likely and imminent and favors granting injunctive relief.

**D.**      **Balance of Hardships Tips Sharply in Venus's Favor**

The equities in this case strongly favor injunctive relief, despite any burden placed on Defendants.  Defendants may continue any legitimate business despite the requested injunctive relief, which balances any harm caused by an injunction.  *Davidoff & Cie, S.A. v. PLD Int'l, 26*3 F.3d 1297, 1304 (11th Cir. 2001).  Permitting Defendants to continue interfering with Venus's business and goodwill, even for a short time, will continue to create irreparable harm toward Venus. The balance of the equities favors granting injunctive relief.

**E.**      **The Relief Sought Serves the Public Interest.**

The public interest strongly favors injunctive relief in this case. This interest is served by halting Defendants' direct and indirect copyright infringement and misleading usage of

the Images. *Id.* at 1034 ("public interest is served by preventing consumer confusion in the marketplace"). Further, Defendants' conduct violates U.S. Copyright laws and the underlying public policies of those laws. Public interest favors compliance with the law. And so, the public interest favors granting injunctive relief.

Therefore, all factors favor granting Venus's request for a temporary restraining order and preliminary injunction.

### F.    <u>The Equitable Relief Sought Should Issue.</u>

This Court has specific authority to order injunctive relief under Section 502 of the Copyright Act. 17 U.S.C. § 502 (1976). Venus requests entry of the following orders.

1.    <u>Entry of a Preliminary Injunction Immediately Enjoining Defendants' Unauthorized and Illegal Use of the Venus Images is Appropriate.</u>

Venus requests an order requiring Defendants immediately cease all use of the Venus Images and any derivative works and destroy or irreversibly delete all Infringing Photographs. This remedy is specifically provided in the Copyright Act, which empowers this Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

This inunction shall also include a requirement that Wish modify the Wish algorithm to prevent any further infringement by Wish. If Wish is unable to immediately modify the algorithm to stop infringing on the Venus Copyrights, to cease and desist operating the algorithm until it can be modified to exclude the Venus Images from use.

2.    <u>Entry of an Order Prohibiting Transfer of the Subject Domain Name During the Pendency of this Action is Appropriate.</u>

To preserve the status quo during the pendency of this litigation, Venus seeks an order prohibiting Defendants from transferring the www.wish.com domain name to other parties.  Under the operating rules of GoDaddy.com where www.wish.com is registered, registrants can transfer ownership of domain names.  Charfoos at ¶ 9, Ex. I (Go-Daddy Domain Transfer Guide https://www.godaddy.com/help/move-a-domain-to-another-godaddy-account-822). Therefore, Defendants involved in litigation can change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff.

Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in intellectual property cases grant such relief.  *See, e.g., Chanel, Inc. v. Zhixian*, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (prohibiting Defendants from transferring ownership of domain names during pendency of until further Order of the Court"); *Gucci America, Inc. v. Does 1-10,* Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010) (same); *Gaffigan v. Does 1-10*, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009) (same); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969 (N.D. Cal. 2006) (prohibiting Defendants "from using, selling, licensing, or transferring the domain name"); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 467-68 (E.D. Mich. 2001).  Here, an interim order prohibiting Defendants from transferring the www.wish.com domain name poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Venus full relief.

        3.     <u>Entry of an Order Preventing the Transfer of Defendants' Assets.</u>

In addition, Plaintiffs request an order restraining Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from use of the copyrighted images is not impaired.  Sections 504(c) and 505 of the Copyright Act provides for statutory damages between $750 and $30,000, increased damages for willful infringement and an award of attorneys' fees and costs.  17 U.S.C. §§ 504(c) (2010) and 505 (1976).  If the Defendants are allowed to move or hide assets it will frustrate Venus's ability to fully enforce its intellectual property rights.

Restraint can be granted pursuant to Federal Rules of Civil Procedure 64 and 65 and under the Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide equitable relief.  Fed. C. Civ. P. 64 and 65; *Levi Strauss & Co., 51* F.3d at 986-87; *Reebok Int'l v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd sub nom. Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992).  In *Reebok*, the district court granted the plaintiff a limited restraint of the defendants' assets for the purpose of preserving them, thus ensuring the availability of a meaningful accounting after trial.

In the years since *Marnatech*, several federal courts have granted temporary restraint of assets in intellectual property disputes, including recently in actions against operators of websites selling counterfeit products to ensure the availability of equitable accounting.  *See, e.g., The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, No. 10-Civ-1630 (AKH) (S.D.N.Y. December 2, 2010); *National Football League v. Chen Cheng, et al.*, No. 11-Civ-00344 (S.D.N.Y. February 1, 2011); *Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D. N.Y. January 4, 2011); *American Bridal and Prom Industry Assoc., Inc. et al. v. The Partnerships and Unincorporated Associations*

*Identified in Schedule "A" and John Does 1-100, et al.,* No. 1:16-cv-00023 (N.D. Ill. January 13, 2016). Such relief is appropriate here, as well.

Accordingly, Venus respectfully request the Court order the Defendants and the operators of Defendants' accounts to prevent the transfer of Defendants' assets and freeze Defendants accounts until further order of this Court.

## CONCLUSION

WHEREFORE, having met its burden, Plaintiff Venus respectfully requests this court schedule a hearing and grant its application to enter a preliminary injunction against Defendants Wish, Inc., ContextLogic Inc., and any other affiliated person or businesses.

Respectfully submitted,

DYKEMA GOSSETT PLLC


Dated: July 14, 2016                By: */s/ Peter A. Chiabotti*_____
                                            Trial Counsel
                                            Allan Gabriel
                                            *Pro Hac Vice Pending*
                                            Dykema Gossett PLLC
                                            333 South Grand Avenue
                                            Suite 2100
                                            Los Angeles, CA 90071
                                            Telephone: 213-457-1800
                                            Facsimile: 213-457-1850
                                            agabriel@dykema.com

                                            Aaron D. Charfoos
                                            *Pro Hac Vice Pending*
                                            Dykema Gossett PLLC
                                            10 S. Wacker Drive
                                            Suite 2300
                                            Chicago, IL 60606
                                            Telephone: (312) 876-1700
                                            Facsimile: (312) 876-1155
                                            acharfoos@dykema.com

**AKERMAN LLP**
David Otero
Florida Bar No. 651370
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL  32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
david.otero@akerman.com

Peter A. Chiabotti
Florida Bar No. 0602671
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
peter.chiabotti@akerman.com

*Attorneys for Plaintiff Venus Fashion,
Inc.*